**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| MARY MATYN and | § | |
| ROBERT D. MATYN, | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:23-CV-00174- |
| v. | § | ALM-AGD |
| | § | |
| STATE FARM LLOYDS, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above-referenced case was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. Pending before the court is Defendant State Farm Lloyds' Motion for Partial Summary Judgment (Dkt. #25). After reviewing Defendant's Motion for Partial Summary Judgment (Dkt. #25), Plaintiffs Mary Matyn and Robert D. Matyn's Response in opposition (Dkt. #26), Defendant's Reply in support (Dkt. #27) and all other relevant pleadings, the court recommends that Defendant's Motion for Partial Summary Judgment be granted in part and denied in part as set forth herein.

## BACKGROUND

On January 20, 2023, Plaintiffs filed the instant lawsuit in the 429th Judicial District Court of Collin County, Texas, and on February 3, 2023, Plaintiffs amended their complaint to join the proper Defendant (Dkt. #1 at p. 1). On March 6, 2023, Defendant removed based on diversity jurisdiction, 28 U.S.C. § 1332 (Dkt. #1 at p. 2). Following removal, Plaintiffs filed an Amended Complaint in federal court on April 6, 2023, alleging that their home was damaged by a severe winter storm on or about February 17, 2021 (Dkt. #10 at p. 3). Plaintiffs allege their home "sustained significant damage all over, including its floors, walls, ceilings, and exterior" that was

REPORT AND RECOMMENDATION

caused "by an abrupt and accidental discharge or overflow of water as a result of freezing" (Dkt. #10 at p. 3). Plaintiffs allege that Defendant refused to cover the full amount of the damages, which Plaintiffs believe are all covered under the insurance policy they have with Defendant (Dkt. #10 at p. 5). Defendant disputes Plaintiffs' allegations and argues that many of the damages alleged by Plaintiffs are not covered under Plaintiffs' insurance policy (Dkt. #11 at p. 4). Defendant alleges it has paid $96,117.67 to Plaintiffs under the policy, (Dkt. #25 at p. 2), but Plaintiffs believe they are still owed $123,757.90 for additional covered losses (Dkt. #25 at p. 9).

Plaintiffs sued Defendant under four independent causes of action: (1) breach of contract; (2) noncompliance with the Texas Insurance Code – Unfair Settlement Practices; (3) violations of the Texas Insurance Code – Prompt Payment of Claims; and (4) breach of the duty of good faith and fair dealing (Dkt. #10 at pp. 14–17). Defendant has moved for partial summary judgment, arguing Defendant did not breach the contract because Plaintiffs are seeking payment for damages that are not covered by the insurance policy, and Plaintiffs cannot show more than a bona fide controversy regarding the extent of insurance coverage (Dkt. #25 at pp. 1–2).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses to help "secure the just, speedy and inexpensive determination of every action." *Nat'l Cas. Co. v. Kiva Const. & Eng'g, Inc.*, 496 Fed. App'x 446, 449 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Certain Underwriters at Lloyd's, London v.*

REPORT AND RECOMMENDATION – Page 2

*Axon Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). All inferences must be construed in the light most favorable to the nonmoving party. *See id.*; *Osprey Ship Mgmt. Inc. v. Foster*, 387 Fed. App'x 425, 429 (5th Cir. 2010). "[T]he substantive law will identify which facts are material. This means [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Gibson v. Collier*, 920 F.3d 212, 219 (5th Cir.), *cert. denied*, 140 S. Ct. 653 (2019) (citing *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019)) (internal quotations omitted).

The party moving for summary judgment has the burden of showing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191 (5th Cir. 2011). "[W]here the movant bears the burden of proof at trial, the movant 'must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.'" *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (citation omitted). However, if the movant does not bear the burden of proof at trial, the movant is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Gonzales v. ConocoPhillips Co.*, 806 Fed. App'x 289, 291 (5th Cir. 2020) (citing *Celotex*, 477 U.S. at 323). Once the movant has carried its burden, the nonmovant "must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307 (5th Cir. 2020). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Malbrough v. Stelly*, 814 Fed. App'x 798, 802 (5th Cir. 2020) (citing *Anderson*, 477 U.S. at 249-50).

**ANALYSIS**

*A. Breach of Contract*

"In order to establish a claim for breach of contract, a plaintiff must establish: (1) the existence of a valid, enforceable contract; (2) the plaintiff performed or tendered performance; (3) defendant breached the contract; and (4) defendant's breach caused plaintiff's damages." *Johnson v. JPMorgan Chase Bank, N.A.*, No. 4:12cv285, 2013 WL 2554415, at *6 (E.D. Tex. June 7, 2013) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). The parties do not dispute whether a valid insurance contract exists (Dkt. #10; Dkt. #11). The issue before the court is whether Defendant breached the insurance contract by not paying certain damages caused by the winter storm. Plaintiffs believe they are owed a significant payment from Defendant, and Defendant argues that the payment Plaintiffs seek is for damages not covered by the contract.

*i.      Trees, Shrubs, and Landscaping*

First, regarding landscaping, Plaintiffs submitted an invoice to Defendant "for removal of a palm tree and shrubs which died during the February 2021 freeze event" (Dkt. #25 at p. 10). Plaintiffs' insurance policy states: "*We* also do not cover: . . . (b) trees, shrubs, live or artificial plants, lawns, or artificial grass, except as provided in **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping**" (Dkt. #25, Exhibit B-1 at p. A.335). (Emphasis in original). The additional coverage for trees, shrubs, and landscaping in Plaintiffs' insurance policy specifically states: "*We* will pay for accidental direct physical loss to outdoor[ landscaping] on the ***residence premises***, caused by the following perils: **Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles** . . . **Vandalism or malicious mischief, or Theft**" (Dkt. #25, Exhibit B-1 at p. A.339). (Emphasis in original). "'An insured cannot recover

under an insurance policy unless it pleads and proves facts that show that its damages are covered

by the policy.'" *Kim v. Nationwide Mut. Ins. Co.*, 614 F. Supp. 3d 475, 490 (N.D. Tex. July 11,

2022) (citing *Tchakarov v. Allstate Indem. Co.*, 2021 WL 4942193, at *5 (N.D. Tex. Oct. 22,

2021). As there is no policy language that provides coverage for the claimed loss of Plaintiffs'

trees, shrubs, or landscaping due to the winter freeze, and Plaintiffs point to no evidence to the

contrary, the court finds that Defendant is entitled to summary judgment as to any and all claims

against Defendant for claimed losses related to trees, shrubs, or landscaping.

     *ii.*    ***Swimming Pool***

Next, Plaintiffs' expert estimated Plaintiffs' swimming pool sustained damages caused by

the freeze event, which total $9,809.23 (Dkt. #25, Exhibit D-1 at p. A.431). In order to recover

payment for damages to the pool, Plaintiffs are required to point to evidence in the record that

raises a genuine dispute of material fact. *Powers*, 951 F.3d at 307. Plaintiffs argue that the pool

damage should be covered due to an "ensuing loss" provision in the insurance policy (Dkt. #26 at

pp. 5–6). This "ensuing loss" provision states: "However, *we* will pay for any resulting loss from

items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section"

(Dkt. #25, Exhibit B-1 at p. A.346). (Emphasis in original). Plaintiffs point to item b., which deals

with "freezing of plumbing, heating, air conditioning, or automatic fire protective sprinkler system

or of a household appliance" (Dkt. #25, Exhibit B-1 at p. A.345). This item b., however, has

nothing to do with Plaintiffs' pool damage, and they cite to no evidence in the record for such

assertion. Indeed, the very next item, c., states that Plaintiffs' insurance policy does not cover "any

loss to the property . . .  that consists of, or is directly and immediately caused by . . . c. freezing,

thawing, pressure, or weight of water, ice, snow, or sleet, whether driven by wind or not, to: (1) a

swimming pool, hot tub, or spa, including their covers, filtration, and circulation systems" (Dkt.

#25, Exhibit B-1 at p. A.345). Because Plaintiffs have not established that damage to their pool due to the freeze is covered by the insurance policy, Defendant is entitled to summary judgment as to any and all claims related to pool damage. *See Kim*, 614 F. Supp. 3d at 490.

### iii.    *Mold and Rat Feces*

Defendant claims that "[t]he main dispute in this case centers on extensive additional mitigation work that Plaintiffs and their representatives performed that went far beyond the water remediation protocol issued by their own hygienist" (Dkt. #25 at p. 10). Plaintiffs hired FixAIRx, LLC to prepare a water damage protocol (Dkt. #25, Exhibit A-9 at pp. A.252–A.276). Defendant relied on this water damage protocol to determine what repairs were recoverable under the insurance policy (Dkt. #25 at p. 4). Plaintiffs, however, argue that this water damage protocol was a baseline, initial report (Dkt. #26 at p. 3). "[T]he FixAIR report was not meant to account for the build-back and repair of the home – the only purpose of the FixAIR report was to provide an initial damage protocol for the initial mitigation of the house, subject to any additional mitigative work subsequently discovered to be required" (Dkt. #26 at p. 7).

Indeed, the report states: "FixAIRx recommends that all moisture sources and any leaks be eliminated/corrected. A qualified professional should identify and properly correct/repair all sources of extensive moisture or water intrusion into the structures before mold remediation takes place" (Dkt. #26 at p. 3, n.8). In stating that a qualified professional would need to come in after FixAIRx to identify and repair sources of water intrusion into the structure, FixAIRx's report contemplated the discovery of additional problems and the associated remedial work to be performed. Plaintiffs contend that this is why the total work performed exceeds that mentioned in

the FixAIRx report. Consequently, the amount that Defendant paid to Plaintiffs is less than half of what Plaintiffs believe they are entitled to under their insurance policy.

The parties also argue about whether the work performed was due to the presence of mold and rat feces, or whether the mold and rat feces simply happened to be present in areas that needed to be repaired. As Defendant has pointed out, the policy does not cover damage caused by mold or animals (Dkt. #25, Exhibit B-1 at pp. A.346–A.348). However, Plaintiffs, as discussed *infra.*, have produced evidence to support their contention that the repairs were performed due to a covered loss, and rat feces happened to be present—not the cause of the damage—and that no mold was present. Even if mold was present, under Plaintiffs' insurance policy, its mere presence "does not negate coverage for" a covered loss (Dkt. #25, Exhibit B-1 at p. A.348).

The FixAIRx report explicitly states that the "[f]lood water met rat feces, microbial toxins, microorganisms, chemical and biological matter, and other hazardous materials, including exposed electrical wiring and devices" (Dkt. #26, Exhibit 4 at p. 8). The report does not, however, state that the damage was caused by the presence of rat feces. Plaintiffs also point to the FixAIRx report that states: "No fungal was visible at the time of the assessment, however, a damp musty odor was already present" (Dkt. #26, Exhibit 4 at p. 8). Plaintiffs concede that no mold was found at the time of the FixAIRx inspection. Regardless, Defendant insists Plaintiffs replaced their HVAC system due to the possible presence of moisture and mold (Dkt. #25 at p. 5). However, Plaintiffs counter that the FixAIRx report suggested replacement of the HVAC system (Dkt. #26 at p. 8). "Defendant's allegation that 'FixAIR's report does not include any recommendation to remove any ductwork' is entirely false. The report clearly states that 'HVAC, duct lines if affected <u>or</u>

REPORT AND RECOMMENDATION – Page 7

exposed to or carried Category 3 "gross contamination <u>should be replaced</u>.'" (Dkt. #26 at p. 8). (Emphasis in original).

Furthermore, Plaintiffs provided evidence from multiple contractors who worked on the repairs at various stages who suggest the work performed was necessary, including but not limited to the testimony of their retained expert witness, David Poynor (Dkt. #26 at p. 7). "Plaintiffs and their expert have testified that all the mitigation and repair work performed was a direct result of the loss or what is necessary to repair the covered damages as a result of the loss." (Dkt. #26 at p. 7). Whether mold and rat feces were the cause of the additional repairs performed is crucial to Plaintiffs' claims, and Plaintiffs have submitted sufficient evidence to counter Defendant's contentions. Thus, a genuine dispute of material fact exists as to whether the remedial work performed was reasonable and necessary due to the winter freeze, and therefore a covered loss under the insurance policy. Defendant's Motion for Partial Summary Judgment with respect to Plaintiffs' claim of breach of contract on this basis should be denied.

**B.  Duty of Good Faith and Fair Dealing**

The court now turns to Plaintiffs' claim that Defendant breached the duty of good faith and fair dealing "by denying or delaying payment to the Claim when Defendant knew or should have known that its liability to Plaintiffs was reasonably clear" (Dkt. #10 at p. 17). "Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)).

> A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has *no reasonable basis* for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial. In order to sustain such a claim, the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable

basis for denying or delaying payment of the claim. The insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim. However, insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim. A bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim. As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith.

*Id.* (citation omitted) (emphasis in original).

Defendant alleges that "the parties' dispute is, at most, a *bona fide* contractual dispute regarding the extent of covered damages and scope of necessary repairs" (Dkt. #25 at p. 13). As support, Defendant details the "ample basis for its decisions regarding the Claim" (Dkt. #25 at p. 12). Defendant investigated Plaintiffs' claim promptly after Plaintiffs submitted it; inspected the property when Plaintiffs and their expert were present after Plaintiffs reported additional information and damages; retained a professional engineer to conduct an independent evaluation; relied on the opinion of its retained expert in making claim decisions; conducted a total of three inspections; received, reviewed, and evaluated information and reports submitted by Plaintiffs; communicated with Plaintiffs and their representatives throughout the process about its decisions; and requested additional information from Plaintiffs when necessary (Dkt. #25 at pp. 12–13). Defendant also alleges Plaintiffs and their representatives "continually sought payment for non-covered repairs such as the extensive mitigation work performed far in excess of their own expert hygienist's protocol and the other non-covered damages" (Dkt. #25 at p. 13).

Plaintiffs, on the other hand, rely on the testimony of their retained expert to claim that Defendant's conduct throughout the remediation process fell below that of the industry standard (Dkt. #26 at p. 13). Plaintiffs allege, through their expert's testimony, that Defendant should have sent an adjuster to the house, adjusted the claim, and stayed with the project until it was finished (Dkt. #26 at p. 13). Rather than point to any authority or case law on the topic, Plaintiffs included

behavior from Defendant that seems to illustrate Defendant's lack of bad faith. "Defendant continued to pay additional living expenses ("ALE") until October 8, 2021, the date Plaintiffs moved back home after finishing all reasonable and necessary repairs. Defendant kept extending ALE in order to 'complete the repairs.'" (Dkt. #26 at p. 13, n.63). This suggests that Defendant continued to make payments throughout the process as it found necessary under the coverage of the insurance policy. *See JNH Holding, Inc. v. Nationwide Prop. & Cas. Ins. Co.*, No. 4:16-CV-00866, 2017 WL 4347683, at *3 (E.D. Tex. Sept. 29, 2017) "[T]he evidence shows that Defendant paid Plaintiff under the policy, and that any further disagreement between the parties is a bona fide dispute as to the proper amount of payment for damages suffered by Plaintiff.").

The fact that the parties dispute exactly what is covered and what is not cannot establish bad faith. *Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 162 (5th Cir. 1994) ("The existence of a bona fide controversy is a sufficient reason for failure of an insurer to make a prompt payment of a loss claim.") (internal citation and quotation marks omitted). Here, Defendant relied on the reports of its own adjusters, the reports from Plaintiffs and their representatives, and Defendant's own expert when it denied some of Plaintiffs' claimed loss. As such, the court recommends that summary judgment be granted on Plaintiffs' claim for breach of the duty of good faith and fair dealing.

## C. *Texas Insurance Code Causes of Action*

Finally, the court takes both of Plaintiffs' Texas Insurance Code claims together. For their misrepresentation claims, Plaintiff has alleged violations of Texas Insurance Code §§ 541.060 and 541.151. However, the court need not address the merits of any of these Texas Insurance Code claims. "Similar to that common-law duty [of good faith and fair dealing], the Insurance Code supplements the parties' contractual rights and obligations by imposing procedural requirements

REPORT AND RECOMMENDATION – Page 10

that govern the manner in which insurers review and resolve an insured's claim for policy benefits." *Utley v. State Farm Lloyds*, No. 4:21-CV-00516, 2022 WL 3141865, at *3 (E.D. Tex. Aug. 5, 2022) (citation and internal quotation marks omitted). Courts have consistently held that "a 'bona fide dispute' regarding insurance coverage precludes liability for breach of the duty of good faith and fair dealing and violations of the [Deceptive Trade Practices Act] and Texas Insurance Code." *Kim*, 614 F. Supp. 3d at 495 (citing *Higginbotham*, 103 F.3d at 460). "Although these claims are individual causes of action which do not depend on each other for support, Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas." *Higginbotham*, 103 F.3d at 460 (affirming summary judgment for the defendant for the Texas Insurance Code violations due to a finding of no breach of the duty of good faith and fair dealing). "Because the Texas Insurance Code . . . claims arise out of the same factual allegations as the bad faith claims, the Court finds that these statutory claims must also be dismissed." *JNH Holding*, 2017 WL 4347683, at *4. Therefore, because the court finds that Defendant did not breach the duty of good faith and fair dealing pursuant to §§ 541.060 and 541.151, Defendant is also entitled to summary judgment on Plaintiffs' related Texas Insurance Code claims.

### D. Texas Prompt Payment Act Cause of Action

Plaintiffs allege that "Defendant violated the prompt payment of claims provision of TEX. INS. CODE § 542.051, *et seq.*" (Dkt. #10 at pp. 16–17). Specifically, Plaintiffs allege Defendant violated §§ 542.055, 542.056, and 542.058 (Dkt. #10 at pp. 16–17). Under § 542.055, Plaintiffs allege Defendant "[f]ail[ed] to acknowledge receipt of the Claim, commence investigation of the Claim, and/or request from Plaintiffs all items, statements, and forms that Defendant reasonably believed would be required within the time constraints provided by TEX. INS.CODE §542.055"

(Dkt. #10 at p. 16). Under § 542.056, Plaintiffs allege Defendant "[f]ail[ed] to notify Plaintiffs in writing of its acceptance or rejection of the Claim within the applicable time constraints provided by TEX. INS. CODE §542.056" (Dkt. #10 at p. 16). Finally, Under § 542.058, Plaintiffs allege Defendant "[d]elay[ed] payment of the Claim following Defendant's receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE §542.058" (Dkt. #10 at p. 17). Defendant argues that "Plaintiffs provide no factual support for these allegations and have no competent evidence that [Defendant] is liable for any additional amounts on Plaintiffs' claim or that it has violated any provision of the Prompt Payment Act" (Dkt. #25 at p. 15). Notably, neither Plaintiffs nor Defendant include any authority to support their arguments as to why these sections of the Texas Prompt Payment Act are or are not applicable.

Section 542.055 of the Texas Insurance Code provides that an insurer has fifteen days to "(1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant." TEX. INS. CODE § 542.055(a)(1)–(3). The Parties agree that the winter freeze occurred on February 17, 2021 (Dkt. #25 at p. 2). The evidence establishes that Plaintiffs contacted Defendant on February 18, 2021, and Defendant sent an adjuster to inspect the damage on February 25, 2021 (Dkt. #25 at p. 2). Defendant's evidence submitted in support of its Motion for Partial Summary Judgment establishes that Plaintiffs, Defendant, and Plaintiffs' mitigation company discussed documenting damages and repairs to submit to Defendant. Plaintiffs do not dispute these facts in their response (Dkt. #26). In fact, Plaintiffs do not even mention § 542.055 in their response. Thus, the court finds these facts are undisputed and establish as a matter of law that Defendant did not violate Texas Insurance Code

§ 542.005. *See Tex. Friends Chabad-Lubavitch, Inc. v. Nova Cas. Co.*, 539 F. Supp. 3d 699, 680 (5th Cir. 2021) ("Accordingly, the court takes as an undisputed fact that Defendant timely acknowledged and began investigating Plaintiff's claim. Plaintiff's Tex. Ins. Code § 542.055 claim thus fails as a matter of law, and Defendant is entitled to summary judgment on this claim.").

"Tex. Ins. Code § 542.056 requires an insurer to 'notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss.'" *Id.* (quoting TEX. INS. CODE § 542.056(a)). Plaintiffs allege that this provision was violated. (Dkt. #10 at p. 16) ("Defendant delayed a coverage determination, despite having all the information it required to make such determination."). Plaintiffs argue that by February 18, 2021, Defendant

> had all the information it needed to make a decision on the claim. Defendant did not hire any other professionals, perform any other inspections, or investigate the loss any further until [Defendant's expert witness's] inspection over two months later on April 28, 2021. Defendant should have paid the claim in full by the 60th day, per Tex. Ins. Code 542.056(a).[1]

(Dkt. #26 at pp. 14–15). Defendant asserts that this provision was not violated. (Dkt. #25 at p. 15) ("[T]he evidence . . . conclusively shows that [Defendant] did not violate any provision of the Prompt Payment Act."). Although neither party provided any caselaw to support its position, a fact question remains as to whether Defendant's explanation of its decision was proper and/or timely, and Defendant's Motion for Partial Summary Judgment as to § 542.056 should be denied.

The court now turns to Plaintiffs' final cause of action under the Texas Insurance Code. Under § 542.058,

---

[1] Plaintiffs should have also cited to Texas Insurance Code § 542.056(d), which states:
> If the insurer is unable to accept or reject the claim within the period specified by Subsection (a) or (b), the insurer, within that same period, shall notify the claimant of the reasons that the insurer needs additional time. The insurer shall accept or reject the claim not later than the 45th day after the date the insurer notifies a claimant under this subsection.

TEX. INS. CODE § 542.056(d).

if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.

TEX. INS. CODE § 542.058.

"An insurer who is found to have violated that section is liable to pay, 'in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees.'" *Tex. Friends*, 539 F. Supp. 3d at 681 (citing TEX. INS. CODE § 542.060(a)). As such, Defendant is required "to show ' that it [could] owe no [Prompt Payment Act] damages as a matter of law.'" *Id.* (citing *Barbara Tech. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 809 (Tex. 2019)). In other words, Defendant must establish "as a matter of law that it can owe no damages, interest, or attorney's fees." *Id.*

In the present case, Plaintiffs argue that they are entitled to recover additional damages that Defendant has not paid up to this point. Defendant, on the other hand, argues that there is a bona fide dispute whether the claimed damages are covered under the Policy. These two scenarios are mutually exclusive. "If Defendant is incorrect and Policy proceeds are due, those amounts are untimely as a matter of law, warranting penalty interest under Tex. Ins. Code § 542.060." *Id.* (citing *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 658 (Tex. 2021) ("[A]n insurer's acceptance and partial payment of the claim within the statutory deadline does not preclude liability for interest on amounts owed but unpaid when the statutory deadline expires.")). The court has determined that Plaintiffs may proceed on their claim that Defendant has not fully paid for the covered damages. Thus, Defendant has not established as a matter of law that it cannot owe additional damages, interest, or attorneys' fees, and summary judgment should be denied on this basis.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the court recommends that Defendant's Motion for Partial

Summary Judgment (Dkt. #25) be **GRANTED IN PART AND DENIED IN PART**. Defendant should be granted summary judgement on all of Plaintiffs' claims related to damages to the pool, trees, shrubs, and landscaping; Defendant should be denied summary judgment as to the remainder of Plaintiffs' breach of contract claims; Defendant should be granted summary judgment on Plaintiffs' claims of violations of the duty of good faith and fair dealing and the Texas Insurance Code §§ 541.060 and 541.151; and Defendant should be granted summary judgment on Texas Insurance Code § 542.055 and denied summary judgment on Texas Insurance Code §§ 542.056 and 542.058.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**IT IS SO ORDERED.**

**SIGNED this 7th day of February, 2024.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE